**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | |
|---|---|
| LORENZO ALVAREZ, Individually and For Others Similarly Situated<br><br>v.<br><br>ELEVATED STEEL, LLC. | Case No. 4:26-cv-00023<br><br>Jury Trial Demanded |

## FIRST AMENDED COMPLAINT

### SUMMARY

1. Defendant Elevated Steel, LLC ("Elevated Steel" or "Defendant") misclassified Lorenzo Alvarez ("Alvarez" or "Plaintiff") and other similarly situated workers as independent contractors, even though they were employees under the Fair Labor Standards Act ("FLSA").

2. This lawsuit includes a collective action pursuant to the FLSA, 29 U.S.C. §§ 201, *et. seq.*, to recover overtime wages.

3. Alvarez and the Straight Time Workers worked for Defendant as fabrication workers.

4. Alvarez and the Straight Time Workers regularly worked for Defendant in excess of forty (40) hours each week.

5. But Defendant did not pay them overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

6. Instead of paying overtime as required by the FLSA, Defendant improperly classified Alvarez and the Straight Time Workers as independent contractors ineligible for overtime, and paid them straight time for overtime. This practice violates the overtime requirements of the FLSA. *See* 29 U.S.C. § 201, *et. seq*.

7. Defendant's decision not to pay overtime compensation to Alvarez and the Straight Time Workers was neither reasonable nor in good faith.

8. Rather, Defendant knowingly and deliberately failed to compensate Alvarez and the Straight Time Workers overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

9. Alvarez and the Straight Time Workers therefore seek to recover all unpaid overtime and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

**JURISDICTION AND VENUE**

10. This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. § 201, *et seq*.

11. This Court has personal jurisdiction over Elevated Steel because Elevated Steel is a resident entity of this District and is subject to the Court's personal jurisdiction.

12. Venue is proper under 28 U.S.C. § 1391(b)(2) because Defendant is headquartered in this District and a substantial part of the events giving rise to this action occurred within the State

of Georgia.

## THE PARTIES

13. Alvarez worked for Elevated Steel from approximately November 2021 until September 2025 throughout the United States, including in California, Florida, Georgia, and New York.

14. Alvarez worked for Elevated Steel as an Ironworker Foreman, working on commercial steel projects across multiple states.

15. His consent to join this action as a party plaintiff will be filed with the Court.

16. Defendant Elevated Steel, LLC ("Elevated Steel") is a Georgia limited liability company engaged in steel fabrication, welding, and installation throughout the United States.

17. Alvarez brings this action on behalf of himself and all other similarly situated Straight Time Workers of Elevated Steel who were denied overtime pay and compensation for all hours worked, in violation of the Fair Labor Standards Act ("FLSA").

18. The Putative Collective of similarly situated employees is defined as:

> **All fabrication workers employed by or working on behalf of Elevated Steel and paid straight time for overtime in the past three (3) years ("Straight Time Workers").**

19. The identities of the Straight Time Workers are readily ascertainable

from Elevated Steel's business and payroll records, including timesheets, pay reports, project logs, and other personnel and classification records maintained by Elevated Steel.

20. Elevated Steel LLC. may be served through its registered agent: **Colton Lemon, 1920 Euharlee Rd, Kingston, GA, 30145, USA.**

## COVERAGE UNDER THE FLSA

21. At all relevant times, Elevated Steel was an "employer" within the meaning of 29 U.S.C. § 203(d).

22. At all relevant times, Elevated Steel was an "enterprise" within the meaning of 29 U.S.C. § 203(r).

23. At all relevant times, Elevated Steel was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1), because it employed workers who handled, fabricated, installed, and transported steel materials, tools, and equipment that have moved in interstate commerce.

24. At all relevant times, Elevated Steel's annual gross volume of sales made or business done exceeded $500,000.

25. At all relevant times, Alvarez and the Straight Time Workers were employees engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. §§ 203(e) and 207(a), including by traveling interstate to perform work and handling goods and materials that moved in interstate

commerce.

## FACTS

26. Elevated Steel provides construction and fabrication services throughout the United States, including in Georgia.

27. To complete its business objectives, Elevated Steel hires personnel (like Alvarez) to provide construction and fabrication services to its clients.

28. For example, Alvarez was hired by Elevated Steel to provide services for its clients throughout the United States, including in California, Florida, Georgia, and New York.

29. Alvarez provided fabrication services for Elevated Steel's customers.

30. Throughout Alvarez's employment with Elevated Steel, Elevated Steel improperly classified him as an independent contractor exempt from overtime.

31. Throughout Alvarez's employment with Elevated Steel, Elevated Steel paid him straight time for overtime, wherein Alvarez received a flat hourly rate for each hour worked, regardless of how many hours he worked in a day or week.

32. At no time during Alvarez's employment with Elevated Steel did Elevated Steel pay him overtime compensation for hours worked in excess of forty (40) in a single week.

33. Alvarez is one of many Fabrication Workers that Elevated Steel employed.

34. Elevated Steel's Fabrication Workers held numerous job titles, including installers, welders, foremen, operators, machine operators, helpers, technicians, and labor hands.

35. Regardless of the job title, Alvarez and the Straight Time Workers all performed fabrication work for Elevated Steel and its customers.

36. Numerous Fabrication Workers and those in similar roles whom Elevated Steel hired were classified by Elevated Steel as independent contractors and deemed ineligible for overtime compensation by Elevated Steel.

37. Elevated Steel paid many of these employees straight time for overtime (without overtime pay).

38. All such employees are subjected to the same or similar illegal pay practices for similar work.

39. These workers make up the proposed collective of Straight Time Workers.

40. During the relevant period, these Straight Time Workers were classified by Elevated Steel as independent contractors.

41. During the relevant period, these Straight Time Workers worked for Elevated Steel on an hourly basis.

42. During the relevant period, these Straight Time Workers were not paid overtime for the hours they worked for Elevated Steel in excess of 40 hours each week.

43. While exact job titles and job duties may differ, Elevated Steel subjected the Straight Time Workers and other fabrication workers to the same or similar illegal pay practices for similar work.

44. Alvarez and the Straight Time Workers performed fabrication services for Elevated Steel's customers, including Amazon in Savannah, Georgia and Glock in Marietta, Georgia.

45. The Straight Time Workers performed the same general job duties performed by Alvarez. That is providing fabrication services for Elevated Steel's customers.

46. The Straight Time Workers worked the same or similar schedule worked by Alvarez, regularly working more than 40 hours each week.

47. Frequently Alvarez and the Straight Time Workers worked for Elevated Steel well over 50 hours in a given week.

48. For example, on the workweek beginning on June 16, 2025, Alvarez worked 11 hours per day from Monday through Saturday.

49. Therefore, on the workweek beginning on June 16, 2025, Alvarez worked 66 hours.

50. Alvarez was paid straight time for overtime for the work he performed on the workweek beginning on June 16, 2025.

51. Alvarez typically worked eleven to twelve hours per day, six to seven days per week.

52. Alvarez's work schedule is typical of the Straight Time Workers.

53. Elevated Steel was in control of the work schedules of Alvarez and the Straight Time Workers.

54. Alvarez and the Straight Time Workers never received a salary for the work they performed for Elevated Steel.

55. Alvarez and the Straight Time Workers work(ed) for Elevated Steel under its straight time for overtime pay scheme.

56. Alvarez and the Straight Time Workers received straight time for overtime regardless of the number of hours or days they worked in a week, even if they worked more than 40 hours in a workweek.

57. Elevated Steel classified Alvarez and the Straight Time Workers as independent contractors.

58. But Elevated Steel hired and treated Alvarez and the Straight Time Workers just like regular, even if sometimes short-term, employees.

59. In fact, Alvarez and the Straight Time Workers were employees of Elevated Steel.

60. The work assigned to and performed by Alvarez and the Straight Time Workers was governed entirely by Elevated Steel.

61. Alvarez and the Straight Time Workers reported directly to Elevated Steel management-level employees.

62. Alvarez and the Straight Time Workers had to follow Elevated Steel's policies and procedures.

63. Alvarez and the Straight Time Workers had to wear uniforms dictated by Elevated Steel.

64. Alvarez and the Straight Time Workers were economically dependent on Elevated Steel and relied on Elevated Steel for work and compensation.

65. Elevated Steel determined the amount and type of compensation paid to Alvarez and the Straight Time Workers.

66. Alvarez and the Straight Time Workers worked in accordance with schedules determined by Elevated Steel.

67. Elevated Steel controlled Alvarez's and the Straight Time Workers' opportunities for profit and loss by dictating the days and hours they worked and the rates and method in which they were paid.

68. Elevated Steel effectively prevented Alvarez and the Straight Time Workers (or outright prohibited them) from working other jobs for other companies while they were working on jobs for Elevated Steel.

69. Elevated Steel prohibited Alvarez and the Straight Time Workers from subcontracting out the work they are assigned by Elevated Steel.

70. While employed by Elevated Steel, Alvarez and the Straight Time Workers did not market their services elsewhere.

71. While employed by Elevated Steel, Alvarez and the Straight Time Workers worked exclusively for Elevated Steel.

72. Alvarez and the Straight Time Workers did not substantially invest in the equipment or tools required to complete the overall job to which they were assigned. Instead, Elevated Steel provided Alvarez and the Straight Time Workers with the equipment and facilities necessary for them to perform the work required of them.

73. Alvarez and the Straight Time Workers do not incur operating expenses like rent, payroll, and marketing.

74. Rather, Elevated Steel made the large capital investments and supplied the business in which Alvarez and the Straight Time Workers work.

75. The work Alvarez and the Straight Time Workers performed was an essential part of Elevated Steel's core businesses.

76. Without the job performed by Alvarez and the Straight Time Workers, Elevated Steel would not have been able to complete its business objectives.

77. At all relevant times, Elevated Steel maintained control, oversight, and direction of Alvarez and the Straight Time Workers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

78. Elevated Steel controlled Alvarez's and the Straight Time Workers' pay.

79. Likewise, Elevated Steel controlled Alvarez's and the Straight Time Workers' work.

80. Even though Alvarez and the Straight Time Workers may have worked away from Elevated Steel's offices without the constant presence of Elevated Steel's supervisors, Elevated Steel still controlled significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

81. The daily and weekly activities of Alvarez and the Straight Time Workers were routine and largely governed by standardized plans, procedures, and checklists created by Elevated Steel.

82. Virtually every job function was predetermined by Elevated Steel, including the tools and equipment used, the schedule of work, and related work duties.

83. Alvarez and the Straight Time Workers performed routine job duties largely dictated by Elevated Steel.

84. All of the Straight Time Workers performed similar job duties and were subjected to the same or similar policies and procedures which dictated the day-to-day activities they performed.

85. All of the Straight Time Workers worked similar hours and were denied overtime as a result of the same illegal pay practice.

86. All of the Straight Time Workers worked in excess of 40 hours each week and often worked more than 50 hours in a workweek.

87. Defendant uniformly denied Alvarez and the Straight Time Workers overtime for the hours they worked in excess of 40 hours in a single workweek.

88. The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

89. Defendant violated the FLSA because Defendant, via their broadly applied and illegal straight time for overtime pay plan, denied Alvarez and the Straight Time Workers of overtime pay for the hours they worked in excess of 40 in a single workweek.

90. Defendant knew Alvarez and the Straight Time Workers worked more than 40 hours in a week.

91. Defendant knew, or showed reckless disregard for whether, Alvarez and the Straight Time Workers were improperly classified as independent contractors (as opposed to employees).

92. Defendant knew, or showed reckless disregard for whether, Alvarez and the Straight Time Workers were not exempt from the FLSA's overtime provisions.

93. Defendant knew, or showed reckless disregard for, whether the Straight Time Workers were entitled to overtime under the FLSA.

94. Defendant utilized a straight time for overtime pay plan despite clear and controlling law that states that Alvarez and the Straight Time Workers were Defendant's non-exempt employees, and not independent contractors.

95. The decision by Defendant to utilize its straight time for overtime pay plan was and is a willful violation of the FLSA and was not undertaken in good faith.

96. Accordingly, Defendant's pay policies and practices blatantly violated (and continue to violate) the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

97. Alvarez incorporates all other paragraphs by reference.

98. Alvarez brings this claim as a collective action under § 216(b) of the Fair Labor Standards Act ("FLSA").

99. Numerous individuals were victimized by Elevated Steel's uniform pattern, practice, and policy of classifying workers as independent contractors while requiring them to perform work as employees without paying overtime compensation.

100. These Straight Time Workers were routinely required to work over forty (40) hours per week without overtime pay.

101. Based on his experience and tenure with Elevated Steel, Alvarez is aware that the illegal practices Elevated Steel imposed on him were likewise imposed on the Straight Time Workers.

102. The Straight Time Workers are similarly situated in all relevant respects.

103. Elevated Steel's failure to pay Alvarez and the Straight Time Workers overtime wages results from generally applicable, systematic policies and practices that are not dependent on the personal circumstances of the individual workers.

104. Even if the precise job duties, locations, or crews of individual Straight Time Workers vary somewhat, these differences do not affect their entitlement to compensation for overtime hours worked.

105. Therefore, the specific job titles, projects, or work locations of the various members of the Putative Collective do not prevent collective treatment.

## CAUSE OF ACTION
## FLSA VIOLATIONS

106. Alvarez incorporates by reference all preceding paragraphs.

107. Elevated Steel violated Section 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), by employing Alvarez and the Straight Time Workers in an enterprise engaged in commerce or in the production of goods for commerce for workweeks longer than forty (40) hours without compensating them at rates not less than one and one-half times their regular rates for all hours worked in excess of forty (40) hours per week.

108. Elevated Steel paid Alvarez and the Straight Time Workers straight time for overtime in violation of the FLSA.

109. Elevated Steel knowingly, willfully, or in reckless disregard of the FLSA carried out this illegal pattern and practice of failing to pay Alvarez and the Straight Time Workers overtime compensation.

110. Elevated Steel's failure to pay overtime compensation to these employees was neither reasonable nor made in good faith.

111. Accordingly, Alvarez and the Straight Time Workers are entitled to recover unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, and costs under 29 U.S.C. § 216(b).

## JURY DEMAND

112. Alvarez demands a trial by jury.

## PRAYER

113. Alvarez prays for relief as follows:

a. For an Order requiring Defendant to provide the names and contact information of all Straight Time Workers;

b. An order awarding Plaintiff and the Straight Time Workers unpaid overtime compensation and an equal amount in liquidated damages under 29 U.S.C. § 216(b);

c. An order awarding Plaintiff reasonable attorneys' fees, litigation expenses, and costs of this action;

d. An order awarding pre- and post-judgment interest;

e. Such other and further relief as the Court deems just and proper, and

f. An Order granting such other and further relief as may be necessary and appropriate.

Date: March 27, 2026.

Respectfully submitted,

By: */s/ Julie H. Burke*

Julie H. Burke
GA Bar No. 448095
HILL, KERTSCHER & WHARTON, LLP
3625 Cumberland Blvd., SE, Ste. 1050
Atlanta, GA 30339-6406
Telephone: 770-953-0995
E-mail: jb@hkw-law.com

AND

*/s/ Carl A. Fitz*

**Carl A. Fitz***
Tex. Bar No. 24105863
**FITZ LAW PLLC**
3730 Kirby Drive, Ste. 1200
Houston, Texas 77098
Tel.: (713) 766-4000
Email: carl@fitz.legal
*Admitted *pro hac vice*

**ATTORNEYS FOR THE PLAINTIFFS**